AO 106 (Rev. 6/09) Application for Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

OCT **3 1** 2013

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

St. Charles County Sheriff's Department
101 Sheriff Dierker Court, O'Fallon, Missouri 63366, Eastern
District of Missouri,
a Dell computer, model number PP31L, other number
28886985253, a Samsung cellular phone, model number SPH-
D710, other number A3LSPHD710

)
)
)
)
)
)

Case No. *4:13 MJ 3263 FRB*

## APPLICATION FOR A SEARCH WARRANT

I, Jacob Walk, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

St. Charles County Sheriff's Department, 101 Sheriff Dierker Court, O'Fallon, Missouri 63366, Eastern District of Missouri,
a Dell computer, model number PP31L, other number 28886985253, a Samsung cellular phone, model number SPH-D710, other number
A3LSPHD710

located in the __EASTERN__ District of __MISSOURI__, there is now concealed *(identify the person or describe the property to be seized);*

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*

Title 18, United States Code, Sections 2251, 2252 and 2252A

*Offense Description*

Production, possession, receipt and distribution of child pornography

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. §3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jacob Walk , Police Officer, Franklin County Sheriff's Office
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 31, 2013

*Judge's Signature*

City and state: St. Louis, Missouri

Frederick R. Buckles, United States Magistrate Judge
*Printed name and title*

FILED

OCT 3 1 2013

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## ATTACHMENT A

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C), and any mechanism used for the receipt or storage of the same, including but not limited to:

Computers, computer hardware, computer or digital media, wireless telephones, computer system and related peripherals including any data processing devices and software, including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, and other memory storage devices; peripheral input/output devices, including but not limited to keyboards, printers, video display monitors, scanners, digital cameras, and related communications devices such as cables and connections; and any devices, mechanisms, or parts that can be used to restrict access to computer hardware, including but not limited to physical keys and locks.

2.     Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

3.     Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs, electronic messages, and handwritten notes), emails, computer logs, and browser and internet history (in documentary or electronic form) pertaining to the possession, receipt or distribution of child pornography (or attempt to do so) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C).

4.     Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of computer equipment found in the searched premises.

5.     Documents and records regarding the ownership and/or possession of the searched premises.

6.     Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted or in contact with Kenneth Hutchings by use of the computer or by other means for the purpose of producing, distributing or receiving child pornography as defined in 18 U.S.C. 2256(8)(A) or (C) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256(2)(A).

1

IN RE SEARCH OF THE PROPERTY LOCATED AT:

St. Charles County Sheriff's Department
101 Sheriff Dierker Court
O'Fallon, Missouri 63366
Eastern District of Missouri,
a Dell computer, model number PP31L, other number 28886985253,
a Samsung cellular phone, model number SPH-D710, other number A3LSPHD710.

## AFFIDAVIT

I, Jacob Walk, being duly sworn, do hereby depose and state:

### I.    INTRODUCTION

1.    I am a Special Federal Officer (SFO) with the Federal Bureau of Investigation's ("FBI") Violent Crimes Against Children Task Force. I have been a Special Federal Officer for approximately six months and have been a sworn Deputy with the Franklin County Sheriff's Office for over nine years. I am also assigned as an investigator to the Missouri Internet Crimes Against Children Task Force and the Secret Service's Gateway Electronic Crimes Task Force. I have conducted numerous investigations regarding the sexual exploitation of children that involve the use of a computer which has been used to commit a crime in violation of Title 18, United States Code, Sections 2251, 2252, and 2252A. As a Task Force Officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. I have been personally involved in the execution of search warrants to search residences and seize material relating to the sexual exploitation of minors including computers, computer equipment, software, and electronically stored information. I have experience utilizing computers during my career as an investigator and I have completed multiple in-service training, outside training, and other courses in computer crime investigation.

2.    This affidavit is made in support of an application for a search warrant to search for and seize instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, which criminalize, among other things, the possession and/or receipt and shipment of child pornography, and other related materials. The items that are the subject of the search and seizure applied for in this affidavit are more specifically described in Attachment A.

3.    The property to be searched is located at the St. Charles County Sheriff's Department, 101 Sheriff Dierker Court O'Fallon, Missouri, located in St. Charles County within the Eastern District of Missouri, and consists of a Dell computer, model number PP31L, other number 28886985253, and a Samsung cellular phone, model number

1

SPH-D710, other number A3LSPHD710.

4.    The statements contained in this affidavit are based on my personal knowledge or information provided to me by other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violation of Title 18, United States Code, Sections 2252, and 2252A including, but not limited to, the items described in Attachment A, which is attached hereto and incorporated by reference, will be found within the property to be searched.

## II.    DEFINITIONS

5.    The following terms have the indicated meaning in this affidavit:

a.    The term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such a device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device. 18 USC § 1030(e).

b.    The term "minor" means any individual under the age of 18 years. 18 USC § 2256(1).

c.    Sexually explicit conduct means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person. 18 USC § 2256(2)(A).

d.    Visual depiction includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image. 18 USC § 2256(5).

e.    Child pornography means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually

2

explicit conduct. 18 USC § 2256(8)(A) or (C).

f.    Identifiable minor means a person who was a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and shall not be construed to require proof of the actual identity of the identifiable minor. 18 USC § 2256(9).

g.    "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data, including for example, tablets, digital music devices, portable electronic game systems, electronic game counsels and wireless telephones. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

h.    "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i.    "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

j.    The phrase "records, documents, and materials" as used herein, including those used to facilitate communications, includes all of the listed items of evidence in whatever form and by whatever means such records, documents, or materials may have been created or stored. Those forms and means of storage and creation include but are not limited to any handmade from (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, videotapes, motion pictures, photocopies); or any information on an electronic or magnetic storage device (such as floppy diskettes, hard disks, and CD-ROMS), as well as printouts or readouts from any magnetic storage device.

3

k.  "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

l.  The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device) Cellular telephones or any other mobile device.

m.  Electronic data may be more fully described as any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment.

1.  "Wireless telephone or mobile telephone, or cellular telephone'" as used herein means is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

4

and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## III.   COMPUTERS AND CHILD PORNOGRAPHY

6.   I have participated in investigations of persons suspected of violating federal child pornography laws, including Title 18, United States Code, Sections 2251, 2252 and 2252A. I have also participated in various mandated and volunteer training for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography.

7.   Computers, computer hardware and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography was formerly produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these images on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of such items was most often accomplished through a combination of personal contacts, mailings, and telephone calls.

8.   The development of computers and computer hardware have changed the way in which individuals interested in child pornography interact with each other, as computers and computer hardware serve four basic functions in connection with child pornography: production, communication, distribution, and storage.

9.   Child pornographers can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. Digital cameras and wireless telephones allow images to be transferred directly onto a computer. A device known as a modem permits computers to connect to other computers through the use of telephone, cable, or wireless connection. Electronic contact can be made to literally millions of computers and wireless telephones around the world.

10.   The ability of computers, computer hardware and wireless telephones to store images in digital form makes them ideal repositories for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) has grown tremendously within the last several years. These drives can store hundreds of thousands of images at a very high resolution.

11.   The Internet affords collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

5

12.　Collectors and distributors of child pornography also utilize online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer.

13.　As is the case with most digital technology, communications by way of computer, computer hardware and wireless telephones can be saved or stored on the devices. Storing this information can be intentional, i.e., by saving an e-mail as a file or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or Internet Service Provider client software, among others). In addition to electronic communications, Internet users generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner can often recover evidence which shows that a computer contains specific software, when the software was installed, logs regarding the usage of the software, and even some of the files which were uploaded or downloaded using the software. Such information may be maintained indefinitely until overwritten by other data.

14.　A growing phenomenon on the Internet is peer to peer-file-sharing (hereinafter referred to as "P2P"). P2P file sharing is a method of communication available to Internet users through the use of special software. The software is designed to allow users to trade digital files through a worldwide network that is formed by linking computers. There are several different software applications that can be used to access these networks, but these applications operate in essentially the same manner.

15.　To access the P2P networks, a user first obtains the P2P software, which can be downloaded from the Internet. This software is used exclusively for the purpose of sharing digital files. Once the P2P software is installed on a computer, the user is directed to specify a "shared" folder. All files placed in that user's designated "shared" folder are available to anyone on the world wide network for download. Most P2P software gives each user a rating based on the number of files he/she is contributing to the network. This rating affects the user's ability to download files. The more files a user is sharing, the greater his/her ability is to download files. This rating system is intended to encourage users to "share" their files, thus propagating the P2P network. A user, however, is not required to share files in order to utilize the P2P network.

16.　A user obtains files by conducting keyword searches of the P2P network. When a user initially logs onto the P2P network, a list of the files that the user is sharing is

6

transmitted to the network. The P2P software then matches files in these file lists to keyword search requests from other users. A user seeking to download files simply conducts a keyword search. The results of the keyword search are displayed and the user then selects the file(s) which he/she would like to download. The download of a file is achieved through a direct connection between the computer requesting the file and the computer(s) hosting the file. Once a file has been downloaded, it is stored in an area previously designated by the user and will remain there until moved or deleted. The majority of the P2P software applications retain logs of each download event.

17.    A person interested in sharing child pornography with others via a P2P network, needs only to place those files in his/her "shared" folder(s). Those files are then available to all users of the P2P network for download, regardless of their physical location.

18.    A person interested in obtaining child pornography can open the P2P application on his/her computer and conduct a keyword search for files using a search term, such as "preteen sex." The keyword search would return results of files being shared on the P2P network that match the term "preteen sex." The user can then select a file(s) from the search results and the selected file(s) can be downloaded directly from the computer(s) sharing the file(s).

19.    The computers that are linked together to form the P2P network are located throughout the world. Therefore, the P2P network operates in interstate and foreign commerce.

20.    One of the advantages of P2P file sharing is that multiple files may be downloaded in parallel (i.e. the user can download more than one file at a time). In addition, a user may download parts of one file from more than one source computer at a time. For example, a user downloading an image file may actually receive parts of the image from multiple computers. The advantage of this process is that it reduces the time it takes to obtain a file(s). A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. An IP address is expressed as four numbers separated by decimals. Each number, which can range from 0 to 256, is unique to a particular internet connection during an online session. The IP address provides a unique location making it possible for data to be transferred between computers.

21.    Even though the P2P network links together computers all over the world and users can download files, it is not possible for one user to send or upload a file to another user of the P2P network. The software is designed only to allow files to be downloaded that have been selected. One does not have the ability to send files from his/her computer to another user's computer without their permission or knowledge. Therefore, it is not possible for one user to send or upload child pornography files to another user's computer without his/her active participation.

7

## IV.   SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

22.   Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components, or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

    a.   Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he/she often stores it in random order and with deceptive file names. The latter requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

    b.   Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. Moreover, the vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. As such, it is difficult to know prior to a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## V.   CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

23.   Most individuals who collect child pornography are sexually attracted to children, as their sexual arousal patterns and erotic imagery focus, in part or in whole, on children. The collection may be exclusively dedicated to children of a particular age/gender or it may be more diverse, representing a variety of sexual preferences involving children. Collectors of child pornography express their attraction to children through the collection of sexually explicit materials involving children, as well as other seemingly innocuous material related to children.

24.   The above-described individuals may derive sexual gratification from actual physical contact with children, as well as from fantasy involving the use of pictures or other

visual depictions of children or from literature describing sexual contact with children. The overriding motivation for the collection of child pornography may be to define, fuel, and validate the collector's most cherished sexual fantasies involving children.

25. Visual depictions may range from fully clothed depictions of children engaged in non-sexual activity to nude or partially nude depictions of children engaged in explicit sexual activity. In addition to child pornography, these individuals are also highly likely to collect other paraphernalia related to their sexual interest in children. This other material is sometimes referred to as "child erotica," further defined as any material relating to children that serves a sexual purpose for a given individual. "Child erotica" is broader and more encompassing than child pornography, though at the same time the possession of such corroborative material, depending on the context in which it is found, may be behaviorally consistent with the offender's orientation toward children and indicative of his/her intent. "Child Erotica" includes things such as fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, cartoons and non-sexually explicit visual images.

26. Child pornography collectors often reinforce their fantasies by taking progressive, overt steps aimed at turning such fantasy(ies) into reality in some, or all, of the following ways: collecting and organizing their child-related material; masturbating while viewing child pornography; engaging children, online and elsewhere, in conversations, sometimes sexually explicit conversations, to fuel and fortify the fantasy; interacting, both directly and indirectly, with other like-minded adults through membership in organizations catering to their sexual preference for children, thereby providing a sense of acceptance and validation within a community; gravitating to employment, activities and/or relationships which provide access or proximity to children; and frequently persisting in the criminal conduct even when they have reason to believe the conduct has come to the attention of law enforcement. These are need driven behaviors to which the offender is willing to devote considerable time, money, and energy in spite of risks and contrary to self-interest.

27. Child pornography collectors almost always maintain and possess their material(s) in the privacy and security of their homes or some other secure location, such as their vehicle(s), where it is readily available. The collection may include sexually explicit or suggestive materials involving children, such as photographs, magazines, narratives, motion pictures, video tapes, books, slides, drawings, computer images or other visual media. The collector is often aroused while viewing the collection and, acting on that arousal, he/she often masturbates, thereby fueling and reinforcing his/her attraction to children.

28. Due to the fact that the collection reveals the otherwise private sexual desires and intent of the collector and represents his most cherished sexual fantasies, the collector rarely disposes of the collection. The collection may be culled and refined over time,

9

but the size of the collection tends to increase. Individuals who use a collection in the seduction of children or to document the seduction of children treat the materials as prized possessions and are especially unlikely to part with them. Even if a child pornography collector deletes files from his hard drive or other electronic media, a computer expert is often able to retrieve those files using computer forensic tools.

## VI.  SEARCH METHODOLOGY TO BE EMPLOYED

29. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (NOTE: The following is a non-exclusive list, as other search procedures may be employed):

   a. Examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as listed in Attachment A;

   b. Searching for and attempting to recover any deleted, hidden, and/or encrypted data to determine whether that data falls within the list of items to be seized as listed in Attachment A (any data that is encrypted and/or unreadable will be returned when law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

   c. Surveying various file directories and the individual files they contain;

   d. Opening files in order to determine their contents;

   e. Scanning storage areas;

   f. Performing keyword searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

   g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment A.

## VII.  DETAILS OF INVESTIGATION

30. On April 11, 2013, I was assigned a lead that Special Agent (SA) Michael Maruschak with the FBI in Rolla, Missouri, received from the Portland Division of the FBI.

31. According to the lead, a subject named Richard Garrett was arrested on child pornography charges in Coos Bay, Oregon, by the Portland Division of the FBI. Garrett gave take-over consent of his email account, richygarrett321@gmail.com.

32. In reviewing the account of richygarrett321@gmail.com, SA Macfarlane of the FBI found one subject who was possibly molesting and/or producing child pornography of his own approximately five-year-old daughter.

33. In January 2013 kennethhutchings2000@gmail.com sent emails to richygarrett321@gmail.com containing both clothed and nude pictures of an approximately five-year-old girl that he claimed were of his daughter.

34. I viewed the emails and located an email dated January 26, 2013 in which richygarrett321 asked kennethhutchings2000 to email him hard core pictures of his daughter. Kennethhutchings2000 responded, "Ya, but your gonna need some DAM! good pics to get them lol. I also have vids of her too, but I only trade vids for vids."

35. Almost immediately afterwards, richygarrett321 sent kennethhutchings2000 a video file and picture files that depicted child pornography. In response, on January 27, 2013, kennethhutchings2000 sent richygarrett321 a video file named "89.wmv." This video file depicted a close-up shot of an adult male having sexual intercourse with a prepubescent minor female. The face of the female and adult were not visible.

36. Kennethhutchings2000 also sent richygarrett321 numerous other sexually explicit images and videos of minors using his Gmail account.

37. Subpoena information provided by SA Macfarlane for kennethhutchings2000@gmail.com from Google, Inc., revealed the name on the account is Kenneth Hutchings who provided an address of Luebbering, Missouri 63061. Luebbering, Missouri is located in Franklin County. A telephone number, (314) 403-6755, was also provided for kennethhutchings2000@gmail.com which I learned was a Sprint telephone number according to Fondefinder.net.

38. A federal subpoena was sent Sprint to identify the account holder for telephone number (314) 403-6755 and on June 17, 2013 this affiant received records from Sprint which indicated the "account established date" was December 2, 2012, and the "billing address" was Kenneth Hutchings 26 Diana Lane Luebbering, Missouri 63061. The account contact number provided by Sprint was 314-288-7447. In addition to that I located a police report filed with the Franklin County Sheriff's Office in 2012 that identified Kenneth Hutchings', Jr., social security account as ▮▮▮-▮▮-▮▮▮▮, date of birth as March ▮ 1986, and telephone number as 314-288-7447.

39. A federal search warrant was served on Google, Inc. for account information and email content for kennethutchings2000@gmail.com. On August 29, 2013 I received

11

a disk from Google via FedEx which contained account information for kennethutchings2000@gmail.com and email content from May to August 2013.

40. Upon viewing the email contact I discovered kennethutchings2000@gmail.com has been communicating with others via email in reference to exchanging child pornography. The following are some of the examples of the emails exchanges:

   a. On June 17, 2013, at 12:34 p.m. kennethhutchings2000@gmail.com sent an email to Joe Smith at wtfl00k1@yahoo.com in which the subject was "The ynger the better. Keep them amature to pls, dont want model pics thx." The email read, "On June 17, 2013 9:45 AM, "Joe Smith" wtfl00k1@yahoo.com wrote: SORRY FOR THE DELAY!!! YOUR TURN - SEND PICS & VIDS BACK." The email contained twelve (12) attachments. The attachments consisted of eleven (11) images and one (1) video. The following are descriptions:

      A. A movie file with the title "--_1_21_.wmv" that was 25 seconds in length. The file depicted a prepubescent minor, approximately two to four years of age, bent over a bed while an adult white male appeared to be engaged in anal or vaginal intercourse with the child. The adult male then removed his penis and began masturbating. The male then ejaculated on the child's lower back. I was unable to determine the sex of the child.

      B. An image file with the title "_45.jpg" that depicted a prepubescent minor female lying on her back and in a lascivious display of her genitals. The female had her legs pulled toward her head and used her hands to spread her vagina apart. Only a portion of her face was visible.

      C. An image file with the title "OwyC-bZo8Hs.jpg" depicted a nude, approximately five-year-old, female sitting on a bed with her legs spread apart. Her face, chest and vagina were visible in the in image.

      D. An image file with the title "4yo Sleepy Time = June 20, 2005 006(2).jpg" that depicted a prepubescent minor female lying on her back with her legs spread apart while an adult male's penis touched her vagina.

      E. An image file with the title "009-JPG" that depicted three nude minor females bent over with their hands and knees on a couch with their legs spread apart. Their vaginas and anus' were the focus of the image.

      F. An image file with the title "56 (2).jpg" that depicted a prepubescent minor female performing oral sex on a prepubescent minor male.

12

G. An image file with the title "298.jpg" that depicted a prepubescent minor female kneeling on her stomach with her legs spread apart. The child's anus and vagina were the focus of the image.

H. An image file with the title "695.jpg" that depicted a prepubescent minor female bent over a bed on her stomach. The female's anus and vagina were the focus of the image.

I. An image file with the title "31767092HdU.jpg" that depicted a prepubescent minor female toddler lying in a bathtub in water on her back with her legs spread apart. The child's vagina was the focus on the image.

J. An image file with the title "Bianca MB836 032.JPG" that depicted a prepubescent minor female approximately eight-years old kneeling nude on the ground with her hands on her hips.

K. An image file with the title "img20110923103454.jpg" that depicted a prepubescent minor female approximately five-years old lying on her back with her legs pulled forward and her pajama bottoms pulled down below her groin. The child was spreading her vagina apart which was the focus of the image.

L. A .jpg image file with a title in foreign characters that depicted a prepubescent minor female approximately eight-years old kneeling on her hands and knees. Her vagina and anus were the focus of the image.

b. On June 20, 2013, at 9:06 p.m. kennethhutchings2000@gmail.com received an email from Jack Russel at jackrussel020@gmail.com containing an attachment. The subject line was empty and the email was addressed to m.kate31@gmail.com and carbon copied to kennethhutchings2000@gmail.com. The attachment consisted of one video described as follows:

A movie file with the title "-5.wmv" that was 52 seconds in length. The file depicted a nude prepubescent minor female approximately one-year old lying on her back. An adult spread the child's legs apart and began trying to spread the child's vagina apart. The remainder of the video was focused on the child's vagina.

c. On July 9, 2013 kennethhutchings2000@gmail.com was corresponding and trading child pornography with Nathaniel S at confinedforever@gmail.com. kennethhutchings2000@gmail.com sent confinedforever@gmail.com a video file with the title "-5.wmv" which kennethhutchings2000@gmail.com received from jackrussel020@gmail.com on June 20, 2013. The video is described above.

13

d. After receiving the "-5.wmv" video file, confinedforever@gmail.com sent kennethhutchings2000@gmail.com an email which read, "I like it but do you have any baby sex videos?" kennethhutchings2000@gmail.com replied in another email, "I wish, send me your youngest hc one."

e. kennethhutchings2000@gmail.com then sent another email to confinedforever@gmail.com with one attachment. The attachment consisted of a video file described as follows:

> The video file had the title "[004255].wmv" that was 2 minutes 2 seconds in length. The file depicted a prepubescent minor female approximately four-years old sitting on a couch with her pants down. The child was rubbing a blue vibrator on her vagina. Later, an adult pulled her pants down further and focused the video on her vagina. During the recording the child asked, "how do you get these pictures on the, the computer," and the male replied, "it's called a USB line, I'll show you later."

f. confinedforever@gmail.com then sent kennethhutchings2000@gmail.com an email with one attachment. The attachment consisted of one video described as follows:

> The video file was titled "09DeepThroat.mp4." The file depicted a prepubescent minor female approximately four-years old performing oral sex on a white adult male.

g. confinedforever@gmail.com sent kennethhutchings2000@gmail.com an email which read, "Did you like the deep throat video?" kennethhutchings2000@gmail.com sent confinedforever@gmail.com a reply which read, "I want something a lot harder lol." confinedforever@gmail.com replied to kennethhutchings2000@gmail.com in an email which read, "You didn't even give me something hard? How is deep throat not hard?" kennethhutchings2000@gmail.com replied to confinedforever@gmail.com in an email which read, "It is, but we both know it get a lot hotter lol."

h. On August 8, 2013, at 11:17 p.m. Kristen Love at deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with "Re: Trade" in the subject line and "trade" in the body of the email. At 11:36 p.m. kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com a reply which read, "Sure, what ya got?" At 1:55 a.m. on August 9, 2013, deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email which read, "a lot of mixed stuff really, how about you?" At 2:14 a.m. kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com a reply which read, "Send what ya want to see." At 2:44 a.m. deadlykatara8@gmail.com sent

14

kennethhutchings2000@gmail.com an email which read, "I like hard pictures young is better." The email contained images of child pornography.

i.  At 6:12 p.m. kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email which read, "Sry it took so long to get back to ya." Attached to the email was the video titled, "09DeepThroat.mp4," which is described in above. kennethhutchings2000@gmail.com received this video from confinedforever@gmail.com on July 9, 2013.

j.  At 10:48 p.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email which read, "That's ok great vid." The email contained three attachments which were two (2) images and one (1) video of child pornography.

k.  At 11:42 p.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com a blank email with the video titled "(3)(1)(1).wmv." It should be noted kennethhutchings2000@gmail.com received this video as an email attachment on July 10, 2013, from littlepusmakesmegrin@gmail.com. The following is a description of the video:

The video file has the title "(3)(1)(1)" and depicted a prepubescent minor female, approximately nine-years old, clothed and on a bed. Later in the video, the female was depicted in the nude from the waist down lying on her back. Her vagina was visible as she spread her legs apart toward her torso and the camera zoomed in on her vagina and anus. Later in the video, an adult male engaged in vaginal intercourse with a female child.

l.  At 11:52 p.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with six images of child pornography.

m. At 11:55 p.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email with the following text, "No more vids?" At 11:56 p.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com a reply with the following text, "have some one sec." At 11:57 p.m.. kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com a reply with the following text, "Younger the better." On August 10, 2013, at 12:02 a.m. deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with a child pornography video attached.

n.  At 12:10 a.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email with the following text, "What kinda vids ya got?" At 12:15 a.m., kennethhutchings2000@gmail.com sent

15

deadlykatara8@gmail.com an email with six attachments which are described as follows:

A. A video file with the title "g-026.wmv" that depicted a minor prepubescent female approximately ten-years old who was nude from the waist down. During the video she performed oral sex on an adult male who is standing in front of her. Later in the video, the child was depicted in the nude while a male positions her so that her vagina and anus are visible to the camera. The child then is depicted rubbing a vibrator on her anus. Later, the male is depicted engaging in anal sex with the child until she complained about the pain.

B. An image file with the title "2.jpg" that depicted a prepubescent minor female approximately three-years old lying down with the focus on the child's vagina.

C. An image file with the title "3.jpg" that depicted a partially nude minor female bent over looking at the camera between her legs with the focus of the image on her vagina and anus.

D. An image file with the tile "5.jpg" that depicted a prepubescent minor female approximately five-years old lying down, nude from the waist down. The child was depicted using her hands to spread her vagina apart.

E. An image file with the title "13.jpg" that depicted a prepubescent minor female, approximately seven-years old, with her underwear pulled down to her knees. The child's vagina and anus were facing the camera.

F. An image file with the title "14.jpg" that depicted a prepubescent minor female approximately seven-years old lying on her back with her legs up in the air and her underwear pulled down to her knees. The child was depicted holding a vibrator on her vagina.

o. At 12:24 a.m. deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with two attachments which were an image file and video file of child pornography.

p. At 12:45 p.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email with one attachment which was the video titled "[004255].wmv" that littlepussmakesmegrin@gmail.com sent kennethhutchings2000@gmail.com on July 10, 2013. This video is described above.

q. At 12:52 a.m., deadlykatara8@gmail.com sent

kennethhutchings2000@gmail.com an email with two attachments which were child pornography videos.

r.  At 1:03 a.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email which contained six attachments which are described as follows:

   A.  An image file with the title "Tie001.jpg" that depicted a minor prepubescent female approximately four-years old wearing a white shirt.

   B.  An image file with the title "Tie002.jpg" that depicted the same prepubescent minor female depicted in "Tie001.jpg." In this image, the prepubescent minor female is wearing a white shirt and red skirt.

   C.  An image file with the title "Tie003.jpg" that depicted the same prepubescent minor female as in "Tie001.jpg." In this image the prepubescent minor female was only wearing white underwear and "Maxx" and other foreign writing were written on her stomach.

   D.  An image file with the title "Tie004.jpg" that depicted the same prepubescent minor female as depicted in "Tie001.jpg." In this image the prepubescent minor female is only wearing white underwear with the same writing on her stomach as depicted in "Tie003.jpg.".

   E.  A video file with the title "-5.wmv." which was the video jackrussel020@gmail.com sent kennethhutchings2000@gmail.com on June 20, 2013. The video is described above.

   F.  A video file with the title "AI.mpeg" that depicted a prepubescent minor female approximately four-years old lying on a bed, nude from the waist up. An adult male was depicted kneeling on the bed next to the child holding her head down with his hand as the child said, "no, no!" The adult male then ejaculated into the child's mouth as she tried to spit it out. kennethhutchings2000@gmail.com received this video from littlepusmakesmegrin@gmail.com on July 10, 2013.

s.  At 1:11 a.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com a reply with the following text, "Last vid was really hot." Attached to the email were image files that depicted child pornography and a video file that depicted child pornography.

t.  At 1:24 a.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email which contained five attachments which are described as follows:

   A.  An image file with the title "Tie005.JPG" that depicted the same

prepubescent minor female as contained in "Tie001.jpg," which is described above. In this file, the prepubescent minor female was depicted pulling down her underwear.

B. An image file with the title "Tie006.JPG" that depicted the same prepubescent minor female as contained in "Tie001.jpg." In this image, the prepubescent minor female was depicted standing in the nude with her chest and vagina visible.

C. An image with the title "Tie007.JPG" that depicted the same prepubescent minor female as contained in "Tie001.jpg." In this image, the prepubescent minor female was depicted standing nude while looking down at her vagina.

D. An image file with the title "Tie008.JPG" that depicted the same prepubescent minor female as contained in "Tie001.jpg." In this image, the nude prepubescent minor female was leaning on furniture and her vagina was the focus of the image.

E. A video file with the title "WebCam rina p1.avi" that depicted a minor female approximately twelve years old, lying on a bed. The video then depicted the minor female's genitals. During the video, the minor female used her hands to spread her vagina apart and to masturbate.

u. At 1:42 a.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email with the following text, "You still out there?"

v. At 3:12 a.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with the following text, "sorry fell asleep, couldn't play the last one for some reason." The email had one attachment which was a child pornography video.

w. At 9:35 p.m., kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com an email with the video file "WebCam rina p1.avi" attached. This was the same video kennethhutchings2000@gmail.com sent deadlykatara8@gmail.com at 1:24 a.m. on the same date which is described above.

x. At 9:41 p.m., deadlykatara8@gmail.com sent kennethhutchings2000@gmail.com an email with the following text, "Cant play those ones."

41. Upon viewing the IP address logs for kennethhutchings2000@gmail.com, which were included with the email content, 1 located login information from February 25th to August 21st 2013. Using the website Maxmind.com, I entered some of the IP addresses into the GeoIP demo and learned the majority of the logins were Sprint

PCS IP addresses. Some of locations given according to Maxmind.com include, Lee Summit, Missouri, Freemont, Alameda, Fontana, Fullerton, Riverside and Los Angeles, California, Denver, Colorado, Salt Lake City, Utah, Gallatin, Mount Juliet, White House and Nashville, Tennessee, Leawood, Kansas, Houston, Texas, Atlanta Georgia, Detroit and Delton, Michigan, Chandler, Oklahoma and Ypsilanti, Michigan. It appears from the IP logins Kenneth Hutchings is often traveling while accessing email account kennethhutchings2000@gmail.com.

42. This affiant and other investigators have obtained the following regarding Kenneth L. Hutchings and the address 26 Diana Lane Luebbering, Missouri:

   a. Public records reports accessed through "Accurint" and "TLO" for Kenneth Hutchings, showed that his full name is Kenneth L. Hutchings; that his social security account number is       that his date of birth is 3/  986; and that his active address is 26 Diana Lane Luebbering, Missouri.

   b. Missouri Bureau of Motor Vehicle records indicated that Kenneth L. Hutchings currently has vehicles registered at 26 Diana Lane Luebbering, Missouri, with the registration expiring on March 2015.

   c. Employment Records provided through "Acom" indicated that since July 2012, Kenneth Hutchings, with a social security account number of       and date of birth of 3/ 986, has been residing at 26 Diana Lane Luebbering, Missouri 63061, and has been employed by CR England, Inc. since July 2012 as a driver according to their records.

43. On April 19, 2013, the United States Postal Inspection Service confirmed that Kenneth Hutchings is receiving mail at 26 Diana Lane Luebbering, Missouri.

44. On October 22, 2013 a Federal Search Warrant was executed on 26 Diana Lane Luebbering, Missouri. A  H   , mother of Kenneth Hutchings Jr., was at home when the search warrant was executed. She advised that her son, who was not home, was an over-the-road truck driver and had a Samsung cellular phone and a black Dell laptop computer with him.

45. During the execution of the search warrant at 26 Diana Lane, Luebbering, Missouri, a thumb drive was also located in a bedroom that Kenneth Hutchings Jr. stays in when he is at home. The thumb drive was forensically examined and found to contain deleted files that depicted images and videos of child pornography. Some of the this files are described as follows:

   a. An image with the title "122930804560.jpg" depicts a white adult male laying on

19

his back holding his penis in his right hand while holding a pre-pubescent small child, approximately two years old, with his left hand forcing the child to perform oral sex on the male.

b. An image with the title "1208326378722.jpg" depicts an adult white male having anal sex with a pre-pubescent young white male child. The adult male's penis is in the rectum of the child. The child's face is not visible so it is difficult to determine the age of the child.

c. A video titled "toddler fucked494(2).avi" is 1 minute 52 seconds long and depicts an adult white male engaged in vaginal intercourse with a young pre-pubescent female child, approximately 3 years old. The child's underwear has been pulled to the side and the male is penetrating her vagina with his penis. The male pulls the child's underwear down and continues the intercourse moving the child around. The child can be heard crying throughout the video. At approximately 1:23, the child is flipped over and the male attempts to continue intercourse.

46.     K     H        , who was also present when the search warrant was being executed, stated that the thumb drive belonged to his son, Kenneth Hutchings Jr. Child pornography was not located on any of the other computers or media devices in the household.

47.     On October 23, 2013, I located Kenneth Hutchings Jr. at RBX in Stradford, Missouri where he stopped to consolidate trailers per his employer. Upon contacting him he gave both verbal and written consent for a search of his semi-truck, owned by Werner Trucking. A Dell computer, model number PP31L (other number 28886985253), and a Samsung cellular phone, model number SPH-D710 (other number A3LSPHD710) were located and seized. Those items were transported to and logged into evidence at the St. Charles County Sheriff's Department.

## VIII. CONCLUSION

48.     Based on the above information, there is probable cause to believe that 18 U.S.C. §§ 2252 and 2252A, which, among other things, make it a federal crime for any person to knowingly possess, receive, and/or distribute child pornography, have been violated, and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment A of this Affidavit, are located within the St. Charles County Sheriff's Department, 101 Sheriff Dierker Court O'Fallon, Missouri 63366.

49.     Your Affiant requests authority to seize such material, specifically, that the Court issue a search warrant for the property located St. Charles County Sheriff's Department, 101 Sheriff Dierker Court O'Fallon, Missouri 63366, for the items listed

in Attachment A.

50. In order to prevent the compromise of this on-going investigation, affiant respectfully requests that the application, affidavit and search warrant be sealed.

## ATTACHMENT A

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C), and any mechanism used for the receipt or storage of the same, including but not limited to:

Computers, computer hardware, computer or digital media, wireless telephones, computer system and related peripherals including any data processing devices and software, including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, routers, computer compact disks, CD-ROMS, DVD, and other memory storage devices; peripheral input/output devices, including but not limited to keyboards, printers, video display monitors, scanners, digital cameras, and related communications devices such as cables and connections; and any devices, mechanisms, or parts that can be used to restrict access to computer hardware, including but not limited to physical keys and locks.

2.     Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

3.     Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs, electronic messages, and handwritten notes), emails, computer logs, and browser and internet history (in documentary or electronic form) pertaining to the possession, receipt or distribution of child pornography (or attempt to do so) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C).

4.     Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of computer equipment found in the searched premises.

5.     Documents and records regarding the ownership and/or possession of the searched premises.

6.     Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted or in contact with Kenneth Hutchings by  use of the computer or by other means for the purpose of producing, distributing or receiving child pornography as defined in 18 U.S.C. 2256(8)(A) or (C) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. 2256(2)(A).

1